UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

BLEID SPORTS, LLC,

    Plaintiff

v.

NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION,

    Defendant

CIVIL ACTION NO. 5:12-374-KKC

**MEMORANDUM OPINION
AND ORDER**

This matter is before the Court upon two motions: the motion to dismiss filed by Defendant National Collegiate Athletic Association ("NCAA") (DE 9) and the motion to amend filed by Plaintiff Bleid Sports, LLC ("Bleid") (DE 14). Having considered the motions and relevant law, the Court will deny Bleid's motion to amend and will grant NCAA's motion to dismiss.

**I.    Background**

Bleid filed the initial complaint in this matter on December 13, 2012. Bleid was an LLC in the business of promoting and organizing high school and middle school basketball tournaments. The NCAA is an unincorporated, voluntary association that adopts rules that govern the athletic programs of its many university members. The relevant bylaw in this case is bylaw 13.11.1.8, which states:

> An institution . . . shall not host, sponsor or conduct a nonscholastic basketball practice or competition in which men's basketball prospective student-athletes . . . participate on its campus or at an off-campus facility regularly used by the

> institution for practice and/or competition by any of the institution's sport programs.

(DE 1, Complaint).

Bleid alleges in its complaint that the first Bleid tournament of the 2011-2012 season was "Rumble at Rupp," scheduled for November 25, 2011 at Rupp Arena. Bleid also alleges that it had contacted the NCAA in advance of Rumble at Rupp to ensure that the tournament would comply with the bylaw. Bleid asserts that a Rupp Arena representative also contacted NCAA to ensure that the event complied with the NCAA rules. On both occasions, Bleid alleges the NCAA assured all parties that the event was in compliance. On November 23, 2011, the University of Kentucky filed a Legislative Relief Waiver with the NCAA to again ensure compliance with the NCAA rules, but the NCAA denied the University's request. Rupp Arena officials then refused to hold the event. Bleid relocated the event to a local high school, but alleges it suffered lost sales and registration fees because of the move. (DE 1, Complaint).

Bleid made several state law claims against the sole defendant, the NCAA, in its complaint. Counts one, two, three, and four are Kentucky state law claims of fraud, negligent misrepresentation, tortious interference with contractual relationships, and tortious interference with prospective business relationships, respectively. In count five, Bleid alleges that "[t]he NCAA's unreasonable and arbitrary interpretation of bylaw 13.11.1.8 with respect to Bleid Sports has limited competition in this market," in violation of the Sherman Act 15 U.S.C. § 1. (DE 1, Complaint).

On January 22, 2013, the NCAA filed a motion to dismiss on all counts of the complaint. (DE 9). In its motion, the NCAA argues that Bleid's state law claims fail as a matter of law because the NCAA is a voluntary unincorporated association and lacks capacity to be sued under

Kentucky law, and that the federal antitrust claim fails as a matter of law because the NCAA recruiting rule is not commercial. (DE 9).

In response to the NCAA's motion, Bleid seeks to amend its complaint (DE 14). Because Bleid's proposed amended complaint largely incorporates the same facts and allegations in its original complaint and because its proposed addition of Murray State University ("MSU") as a representative defendant would be futile, the Court will deny the motion to amend and grant the motion to dismiss.

## II.     Motion for Leave to Amend

Federal Rule of Civil Procedure 15(a)(2) provides that a party may amend its pleadings with the court's leave, which "[t]he court should freely give . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). A court, however, need not grant leave to amend under Rule 15 if the amendment would be futile. *Miller v. Calhoun Cnty.,* 408 F.3d 803, 817 (6th Cir. 2005); *see also Riverview Health Inst. LLC v. Med. Mut. of Ohio,* 601 F.3d 505, 519 (6th Cir. 2010) (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)). "Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Miller,* 408 F.3d at 807 (citing *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.,* 632 F.2d 21, 23 (6th Cir. 1980)).

Bleid's tendered amended complaint largely incorporates the allegations of the original complaint, but adds MSU as a party to cure its amended defects as to its state law claims. (DE 14, Proposed Amended Complaint, Memorandum). In the original complaint, the NCAA was the only named defendant. (DE 1, Complaint). Under Kentucky law, an unincorporated voluntary association like the NCAA is an aggregate of its members, and therefore lacks the capacity to be sued in its own name. *Future Fed. Sav. and Loan Ass'n v. Daunhauer*, 687

3

S.W.2d 871, 873 (Ky. Ct. App. 1985); *Bus. Realty, Inc. v. Noah's Dove Lodge No. 20*, 375 S.W.2d 389, 390) ("They [voluntary associations] are not legal entities and in Kentucky they cannot properly sue or be sued as such.") (DE 14, Memorandum at 2). Thus, Bleid seeks to add MSU, a member of the NCAA, as a defendant. (DE 14, Memorandum).

MSU is a public university and is immune from suit under the Eleventh Amendment. Therefore, allowing Bleid to add MSU as a party would be futile. The Eleventh Amendment states:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.

U.S. CONST. amend. XI. "The Supreme Court has held that the Eleventh Amendment prohibits federal courts form entertaining suits by private parties against the states." *Stigall v. Univ. of Kentucky Hosp.*, 2009 WL 3739385, at *2 (E.D. Ky. Nov. 6, 2009) (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985)). The Eleventh Amendment's grant of immunity "is far-reaching and bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments, by citizens of another state, foreigners, or its own citizens." *Lanier v. Kentucky Com'n on Human Rights*, 2007 WL 2407274, at *2 (W.D. Ky. Aug. 20, 2007).

Bleid contends that it has no intention to treat MSU as a "party" for purposes of this case. (DE 21). It is of no relevance, however, that Bleid calls MSU a "representative defendant." The Eleventh Amendment is concerned not just with the state's purse, but also with the idea of subjecting a sovereign state to the "'coercive process of judicial tribunals at the instance of private parties.'" *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (internal citations omitted); *see also Jackson v. Murray States Univ.*, 834 F. Supp. 2d 609, 613 (W.D. Ky. 2011) (rejecting the argument that the Eleventh Amendment does not apply

4

in a suit against MSU because MSU would not suffer financially since it carries insurance). Further, Bleid states no legal reason why a successful suit against MSU and the NCAA would not entitle Bleid to monetary relief from both MSU and the NCAA.

Kentucky public universities are state agencies and are protected under the Eleventh Amendment. *Jackson*, 834 F. Supp. at 613; *see Hustell v. Sayre*, 5 F.3d 996, 999 (6th Cir. 1993) (holding that the University of Kentucky is an "arm of the state under state law. . . ."). Thus, MSU is entitled to sovereign immunity as a public university. *Jackson*, 834 F. Supp. 2d, at 613. An individual may successfully sue a state for monetary relief under two circumstances. *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). First, Congress may authorize suit under its power to enforce the Fourteenth Amendment, and second, a state may waive its sovereign immunity by consenting to suit. *Id.* Bleid has provided no indication that either exception applies.

Bleid argues that this Court should allow it to add MSU as a party and then allow MSU to assert its own sovereign immunity defense if MSU chooses to do so. (DE 21). Essentially, Bleid argues that MSU might choose to waive its defense of sovereign immunity. (DE 21). Some courts have indicated that a failure to raise a sovereign immunity defense waives that defense. *See, eg.*, *Akers v. Cnty*, 498 Fed. Appx. 483, 490 (6th Cir. 2012). However, even assuming that sovereign immunity can be waived by defending a case on the merits, this contention fails under the circumstances of this case for a number of reasons.

First, Bleid's argument assumes MSU would choose not to raise a valid defense. Second, it degrades the Kentucky State Constitution, since the only claims that Bleid would assert against MSU would be state law claims. The Kentucky Constitution provides that immunity cannot be waived, except by legislative action. Ky. Const. § 231; *Commonwealth,*

5

*Dept. of Highways v. Davidson*, 383 S.W.2d 346, 348 (Ky. 1964); *Dept. of Corr. v. Furr*, 23 S.W.3d 615, 616 (Ky. 2000). In fact, under Kentucky law, sovereign immunity can even be raised for the first time on appeal, because waiver can only occur through legislative action. *Louisville Metro Hous. Auth. Dev. v. Commonwealth Sec., Inc.*, 2013 WL 3237480 at *3 (Ky. Ct. App. June 28, 2013) (internal citations omitted). "Certainly the constitutional mandate would be of small stature if its precepts could be waived by any state officer or agent other than the general assembly." *Commonwealth Sec., Inc.*, 383 S.W.2d at 348. Because Bleid's claims against MSU would be state law claims, MSU would be unable to waive its sovereign immunity without legislative action, and Bleid has not pointed to any Kentucky Statute that would waive MSU's immunity.

Finally, Bleid also contends that the NCAA has no standing to assert a sovereign immunity defense on behalf of MSU. (DE 21). This Court need not address that concern, because even if Bleid is correct, the Sixth Circuit has held that federal courts may, *sua sponte*, raise the issue of sovereign immunity because "'it implicates important questions of federal-court jurisdiction and federal-state comity.'" *Cady v. Arenac Co.*, 574 F.3d 334, 344 (6th Cir. 2009). Thus, the Court rejects the addition of MSU as a party not because the NCAA asserts the sovereign immunity defense on MSU's behalf, but because it would be futile to allow Bleid to add an obviously immune party.

While adding MSU as a party is the most notable proposed amendment in Bleid's motion for leave to amend, all of Bleid's proposed amendments are futile in that they would not allow Bleid to survive a motion to dismiss. (DE 14); *Miller,* 408 F.3d at 807. Few additional facts were alleged in the proposed amended complaint. (DE 14). Because MSU would be immune from suit and because Bleid's state law claims cannot go forward against the NCAA under

Kentucky state law, this Court denies Bleid's motion for leave to amend as to both issues. Finally, for reasons discussed below, this Court denies Bleid's motion for leave to amend to clarify the geographic scope of the market in its antitrust claim, because the few additional facts it alleges in the proposed amended complaint would not alter the Court's ruling on the motion to dismiss.

### III. Motion to Dismiss

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). The Court "must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). In the instant case, even accepting all of the factual allegations as true, Bleid has failed to state a legal claim upon which relief can be granted.

#### A. Kentucky State Law Claims

In its complaint, Bleid asserts four Kentucky state law claims against the NCAA: fraud, negligent misrepresentation, tortious interference with contractual relationships, and tortious interference with prospective business relationships. Under Kentucky law, "an unincorporated association cannot be sued solely in its own name." *Am. Collectors Exch., Inc. v. Kentucky State Democratic Cent. Exec. Comm.*, 566 S.W.2d 759, 761 (Ky. Ct. App. 1978) (holding that a motion to dismiss was appropriate since the defendant was an unincorporated association); *Bus. Realty, Inc.*, 375 S.W.2d at 390. Bleid does not deny that the NCAA is not a legal entity capable

7

of being sued under Kentucky law, but instead attempts to add MSU as a representative defendant (DE 14, Memorandum, "Because the NCAA is an unincorporated association that is not otherwise subject to suit under Kentucky law, it is necessary to add Murray State University as a representative defendant."). Because this Court has determined that adding MSU as a party would be futile, and because the NCAA cannot be sued under Kentucky law, Bleid's state law claims fail as a matter of law. Thus, the NCAA's motion to dismiss is granted as to the first four counts of the complaint.

### B. Federal Antitrust Claim

Finally, in count five of the complaint, Bleid alleges that the NCAA has violated Section 1 of the Sherman Act, 15 U.S.C. § 1 by arbitrarily interpreting bylaw 13.11.1.8. (DE 1, Complaint). This claim also fails as a matter of law. To state a claim under the Sherman Act, the rule at issue must be commercial in nature. *Bassett v. Kentucky Athletic Ass'n.*, 528 F.3d 426, 433 (6th Cir. 2008). The Sixth Circuit has held, "[s]imilar to the eligibility rules in *Smith*, NCAA rules on *recruiting student athletes*, specifically those rules prohibiting *improper inducements* and academic fraud, *are all explicitly non-commercial*." *Id.* (emphasis added). The Sixth Circuit went on to say, "[i]n fact, those rules are *anti-commercial* and designed to promote and ensure competitiveness among NCAA member schools." *Id.*

The NCAA bylaw at issue in this matter states:

> An institution . . . shall not host, sponsor or conduct a nonscholastic basketball practice or competition in which men's basketball prospective student-athletes . . . participate on its campus or at an off-campus facility regularly used by the institution for practice and/or competition by any of the institution's sport programs.

(DE 1, Complaint). On its face, this bylaw is clearly a recruiting rule. The rule references, "prospective student-athletes" and "nonscholastic . . . competition[s]," both of which would

8

obviously indicate its recruiting nature. Further, Bleid concedes that, "Bylaw 13.11.1.8 is technically classified as a 'recruiting' rule." (DE 13, Response to Defendant's Motion to Dismiss, 10). Bleid's contention that the bylaw is technically a recruiting rule, but still has a commercial effect, is flawed. The Sixth Circuit has reasoned, "[i]f the rules themselves and the corresponding sanctions are not commercial . . . then the enforcement of those rules cannot be commercial." *Bassett*, 528 F.3d at 433. As the Sixth Circuit indicated in *Bassett*, "violation of the . . . NCAA rules gives the violator a decided competitive advantage in recruiting and retaining highly prized student athletes." *Id.* Violation of the bylaw in this matter would give violators the advantage of having prospective student-athletes be exposed to the violator's competition venues and allow for a recruiting advantage, both as to the student-athletes' exposure and as to the violator's ability to recruit on the violator's home court. A plain reading of the bylaw indicates that it is a recruiting rule rather than a commercial one.

Despite the holding in *Bassett*, Bleid argues that the bylaw in this matter is commercial because of the Sixth Circuit's dicta in *Worldwide Basketball and Sport Tours, Inc. v. National Collegiate Athletic Association* 388 F.3d 955 (6th Cir. 2004). (DE 13). In *Worldwide Basketball*, the Sixth Circuit simply noted that the NCAA's "Two in Four" rule "has some commercial impact" to allow the Court to proceed to evaluate whether the district court's dismissal was appropriate on other grounds. *Worldwide Basketball and Sport Tours, Inc.*, 388 F.3d at 959. The "Two in Four" rule was a NCAA rule that restricted the number and type of games individual schools were permitted to play. *Id.* at 957. While the "Two in Four" rule did have a recruiting component, the plaintiffs in *World Wide Basketball* alleged that the rule "was adopted purely to deny outside promoters the opportunity to make money from the certified events." *Id.* at 958. In the instant case, Bleid alleges only that the NCAA's "arbitrary

9

interpretation of bylaw 13.11.1.8" has caused it and others commercial harm, (DE 1, Complaint) and thus, Bleid makes no allegation that the rule exists purely for commercial reasons. As already noted, if the rule at issue is not commercial, than the enforcement of the rule is also not commercial. *Bassett*, 628 F.3d at 432. Moreover, the dicta concerning the commercial nature of the "Two in Four" rule in *Worldwide Basketball* was not a holding of that case, and it was decided four years prior to *Bassett's* clear ruling. *Worldwide Basketball and Sports Tours, Inc*. 388 F.3d at 959. At least one other court in the Sixth Circuit has already noted that, "[i]n *Bassett*, the court found that Section One of the Sherman Act did not apply to the NCAA's enforcement of its rules on recruiting student athletes." *Brentwood Acad. v. Tennessee Secondary Schools Atl. Ass'n*, 2008 WL 2811307 at *3 (M.D. Tenn. July 18, 2008). Thus, to the extent that there is any conflict between *Bassett* and *Worldwide Sports*, *Bassett* is controlling.

For these reasons, the NCAA bylaw at issue here is not commercial in nature, and therefore Bleid fails to state a claim under the Sherman Act. *Bassett*, 528 F.3d at 433.

**IV. Conclusion**

Accordingly, for the above stated reasons, the Court HEREBY ORDERS as follows:

1. Plaintiff Bleid's Motion for Leave to Amend Plaintiff's Complaint (DE 14) is **DENIED;**

2. Defendant NCAA's Motion to Dismiss all counts in the Complaint (DE 9) is **GRANTED**.

This 26th day of September, 2013.

